UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VANESSA COWAN,

                              Plaintiff,

          -v-

THE CITY OF MOUNT VERNON, MARTIN
BAILEY, NICHELLE JOHNSON,

                              Defendants.

---

No. 14-CV-8871(KMK)

OPINION & ORDER

Appearances:

Benjamin L. F. Leavitt, Esq.
Leavitt Legal PLLC
White Plains, NY
*Counsel for Plaintiff*

Paul J. Sweeney, Esq.
Coughlin & Gerhart, LLP
Binghamton, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

          Plaintiff Vanessa Cowan ("Plaintiff") brings this Action against Defendants the City of

Mount Vernon (the "City"), Martin Bailey ("Bailey"), and Nichelle Johnson ("Johnson," and

collectively, "Defendants"), alleging sexual discrimination, harassment and retaliation in

violation of the Equal Protection Clause of the Fourteenth Amendment, Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and New York State law.  Before the

Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

(the "Motion").  (Dkt. No. 41.)  For the reasons to follow, Defendants' Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint ("SAC") and are taken as true for the purpose of resolving the instant Motion.

Plaintiff was sworn into the Mount Vernon Police Department (the "Police Department") on January 6, 2013 and began her training at the Police Academy on or around January 8, 2013. (Second Am. Compl. ("SAC") ¶¶ 27–28 (Dkt. No. 36).)  Following her graduation from the Police Academy, Plaintiff joined the Police Department as a probationary employee.  (*Id.* ¶ 28.) At the time Plaintiff applied to the Police Department, Plaintiff had a Notice of Claim pending with the City in connection with "sexual harassment she had endured as an employee of the Mount Vernon Youth Bureau," but had not filed any action against the City.  (*Id.* ¶ 29.)

"From very early in [Plaintiff's] employment as a police officer, [Defendant] Bailey[, an employee of the Police Department,] engaged in sexual harassment of Plaintiff" through conduct that included "making comments about Plaintiff's body, making requests for sex[,] and even going so far as demanding money from Plaintiff if she was unwilling to sleep with him."  (*Id.* ¶¶ 20, 30.)  In response, Plaintiff filled out "MV-5" forms and filed several harassment complaints about Bailey with the Police Department.  (*Id.* ¶ 31.)  Bailey told Plaintiff that "he had been instructed by 'friends' in the Law Department for the City" to ensure "that Plaintiff was fired from the Police Department."  (*Id.* ¶ 32.)  Bailey made clear to Plaintiff that the "friend" in the Law Department was Defendant Johnson, then-corporation counsel for the City.  (*Id.*)

"[O]n numerous occasions," Bailey threatened Plaintiff that he would "spread rumors" about her in connection with "that stuff that happened across the street," a reference to the Notice of Claim and subsequent lawsuit Plaintiff filed against the City.  (*Id.* ¶ 33 (internal quotation

marks omitted).)  Bailey also told Plaintiff that "he was going to make sure that superior officers in the Police Department viewed her as a 'problem' employee," and other officers in the Police Department told Plaintiff that "everyone in the [D]epartment thinks you're a problem."  (*Id.* ¶ 34 (internal quotation marks omitted).)  Plaintiff also overheard Bailey tell another detective that Plaintiff "was dangerous," "needed to be stopped," and that Bailey needed "help to get rid of [Plaintiff]."  (*Id.* ¶ 35 (internal quotation marks omitted).)  In the presence of other Police Department officers, Bailey told Plaintiff, "Bitch, your days are numbered."  (*Id.* ¶ 36 (internal quotation marks omitted).)

Plaintiff followed all Police Department protocol in reporting Bailey's "continued" harassment.  (*Id.* ¶ 37.)  After filing "numerous written complaints concerning Bailey, Plaintiff was transferred to another unit in the Police Department," which Plaintiff describes as a "sub-station" where she was "ostracized," "segregated," and "cut off from other officers."  (*Id.* ¶¶ 38–39.)  Bailey's harassment declined following the transfer.  (*Id.* ¶ 39.)

Plaintiff asserts that the segregation was in part a response to Plaintiff's sexual harassment complaints, but was also a reaction to Plaintiff's pending lawsuit against the City.  (*Id.* ¶ 40.)  Specifically, Plaintiff alleges that the transfer "was explicitly designed to have a negative impact o[n] her job performance" because Plaintiff had been told by multiple administrators in the Police Department that "she could not sue the City and remain a [p]olice [o]fficer."  (*Id.* (internal quotation marks omitted).)  Despite the transfer, Plaintiff never received negative comments, reviews, or reports about her job performance at the Police Department.  (*Id.* ¶ 41.)

In early June 2014, Plaintiff was notified that she was being placed on "paid administrative leave," a status that Plaintiff asserts did not exist "under the Police Department

Rules and Regulations" or the "State o[r] City Civil Services Codes."  (*Id.* ¶ 42 (internal

quotation marks omitted).)  Plaintiff alleges that such status served as an "effective[]

terminat[ion] without a hearing and without all of the processes due her under any and all

applicable law[s]."  (*Id.* ¶ 43.)  "Eventually," Plaintiff was notified that she would not be retained

by the Police Department following her probationary period.  (*Id.* ¶ 44.)  Plaintiff requested, but

was denied, a formal meeting with the Commissioner of the Police Department, a right she was

allegedly afforded under Mount Vernon City Law, the City Charter, and applicable state and

federal law.  (*Id.* ¶¶ 44–45.)

Plaintiff seeks compensatory and punitive damages in the amount of three million dollars,

as well as attorney's fees.  (*Id.* at 9.)

B.  Procedural History

Plaintiff filed the Complaint in this Action on November 7, 2014, (Dkt. No. 1), and filed

an Amended Complaint on March 26, 2015, (Dkt. No. 8).  Pursuant to a scheduling order issued

May 29, 2015, (Dkt. No. 11), Defendants filed a motion to dismiss and accompanying papers on

August 6, 2015, (Dkt. Nos. 17–19).  On November 2, 2015, Plaintiff filed a memorandum in

opposition to Defendants' motion to dismiss, and a cross-Motion To Amend, seeking leave to

file a SAC.  (Dkt. Nos. 21–22.)  Defendants did not file any papers in further support of their

motion to dismiss and did not oppose Plaintiff's Motion To Amend.  On March 17, 2016,

Plaintiff filed a renewed Motion To Amend.  (Dkt. No. 32.)  The Court granted the Motion To

Amend and denied Defendants' motion to dismiss without prejudice.  (Dkt. No. 35.)

Plaintiff filed the SAC on March 25, 2016.  (Dkt. No. 36.)  Defendants filed the instant

Motion To Dismiss and accompanying papers on April 26, 2016, (Dkt. Nos. 41–43), and

Plaintiff filed her opposition on May 25, 2016, (Dkt. No. 44).  Defendants filed a reply on June 8, 2016.  (Dkt. No. 45.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Plaintiff brings hostile work environment claims against all Defendants (Counts I and II) and a claim for retaliation against the City (Count III).  Plaintiff asserts her hostile work environment claims against the City under both Title VII and § 1983, and against Bailey and Johnson under § 1983.[1]

---

[1] As Defendants identify, certain portions of Plaintiff's SAC address allegations of conspiracy, procedural due process, and intentional infliction of emotional distress.  (*See* SAC ¶ 15 ("[T]he above acts constituted . . . [a] violation of Plaintiff's procedural due process rights as well as conspiracy for the same"); *id.* ¶ 16 ("This case arises under 42 U.S.C. § . . . 1985"); *id.* ¶ 22 (alleging the sexual harassment was "the product of an unlawful conspiracy as well as a conspiracy to wrongfully terminate Plaintiff"); *id.* ¶ 23 ("[Defendants] . . . engaged in the wrongful termination of Plaintiff, a conspiracy to deprive Plaintiff of her First [A]mendment [r]ights, intentional infliction of emotional distress . . . .").)  These allegations appear to be relics of prior complaints in this Action, as nowhere does Plaintiff plead facts in connection with these

### 1.  Hostile Work Environment

"Title VII prohibits an employer from discriminating in 'compensation, terms, conditions, or privileges of employment, because of [an] individual's . . . sex . . . .'" *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (alteration in original) (quoting 42 U.S.C. § 2000e–2(a)(1)).  The phrase "terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1), "evinces a congressional intent to strike at the entire spectrum of disparate treatment . . . , which includes requiring people to work in a discriminatorily hostile or abusive environment."  *Littlejohn*, 795 F.3d at 320 (internal quotation marks omitted).  Similarly, § 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, "protects [public] employees from sex-based workplace discrimination, including hostile work environments . . . ."  *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A]lthough . . . Title VII claims are not cognizable against individuals, individuals may be held liable under . . . [§] 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment.").  "The standard for showing a hostile work environment under Title VII [and] [§] 1983 . . . is essentially the same."  *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011), *reconsideration denied*, 982 F. Supp. 2d 225 (E.D.N.Y. 2013); *see also Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("[Section] 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment . . . on the basis of gender.  Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination

---

claims.  Additionally, such claims are not listed in the "Claims for Relief" section of the SAC. (*See id.* ¶¶ 47–60.)  Accordingly, to the extent Plaintiff seeks to assert such claims in this Action, they are dismissed.

claims brought under Title VII . . . ."); *Ruiz v. City of New York*, No. 14-CV-5231, 2015 WL 5146629, at *8 (S.D.N.Y. Sept. 2, 2015) ("The same standard [used for Title VII claims] is used for evaluating hostile work environment claims under [§] 1983. . . .").

"To establish a hostile work environment under Title VII . . . or § 1983, a plaintiff must show that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) ("To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001))).[2]  At the motion to dismiss stage, however, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003); *see also Gonzalez v. City of New York*, No. 15-CV-3158, 2015 WL 9450599, at *4 (E.D.N.Y. Dec. 22, 2015) (same).

---

[2] "Employment discrimination claims under [§] 1983 that seek to vindicate a plaintiff's Fourteenth Amendment right to equal protection under the laws are measured against the same standards as are [the] [p]laintiff's Title VII hostile work environment and sex . . . discrimination claims."  *Cortes v. City of New York*, 700 F. Supp. 2d 474, 487 (S.D.N.Y. 2010).

"[A] work environment's hostility should be assessed based on the totality of the circumstances." *Patane*, 508 F.3d at 113 (internal quotation marks omitted); *see also Humphries v. City Univ. of N.Y.*, No. 13-CV-2641, 2013 WL 6196561, at *10 (S.D.N.Y. Nov. 26, 2013) (same). Relevant circumstances include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Humphries*, 2013 WL 6196561, at *10 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)); *see also Rivera v. Rochester Genesee Regional Trans. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) (same). "[W]hether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry," and accordingly, the Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss. *Pantane*, 508 F.3d at 113–14 (internal quotation marks omitted); *see also Gonzalez*, 2015 WL 9450599, at *4 (same); *Humphries*, 2013 WL 6196561, at *10 (same); *Jackson v. N.Y. State Dep't of Labor*, No. 09-CV-6608, 2012 WL 843631, at *4 (S.D.N.Y. Mar. 12, 2012) (same).

Finally, the incidents of harassment, generally, "'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Raspardo*, 770 F.3d at 114 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). However, "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano*, 294 F.3d at 374; *see also Camarda v. City of New York*, No. 11-CV-2629, 2015 WL 5458000, at *7 (E.D.N.Y. Sept. 16, 2015) (same), *aff'd*, 2016 WL 7234686 (2d Cir. Dec. 14, 2016).

<u>a.  Plaintiff's Claims Against Individual Defendants</u>

The extent of Plaintiff's allegations of sexual harassment is that "[f]rom very early in her employment as a police officer, Bailey engaged in sexual harassment of Plaintiff.  His conduct included making comments about Plaintiff's body, making requests for sex[,] and even going so far as demanding money from Plaintiff if she was unwilling to sleep with him."  (SAC ¶ 30; *see also* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss the SAC ("Pl.'s Opp'n") 8 (Dkt. No. 44) (rebutting Defendants' arguments regarding hostile work environment by noting that "Plaintiff alleges that Defendant Bailey commented on Plaintiff's body, made requests for sexual relations[,] and demanded money i[f] Plaintiff would not have sex with him").)  While Plaintiff argues in her opposition papers that she "does not allege that this happened just once[,] but that it continued over her employment," (Pl.'s Opp'n 8), specific allegations are missing from the SAC. The lack of specific allegations is complicated by the fact that Plaintiff fails to offer a timeline of events from which the Court can discern the course of the alleged violations.  Plaintiff asserts that Bailey's harassment began "[f]rom very early in her employment," the conduct "continued" and was "pervasive and ongoing," (SAC ¶¶ 30, 36–37), until Plaintiff was transferred and "Bailey's harassment declined," (*id.* ¶ 38).  Yet, Plaintiff does not indicate when the transfer occurred and thus the Court cannot determine for how long the alleged harassment persisted.

To be clear, allegations of "comments about Plaintiff's body," and "requests for sex" are troubling and, not surprisingly, are the type of allegations that routinely support a hostile work environment claim.  *See, e.g.*, *Cruz v. N.Y. State Dep't of Corr. and Cmty. Supervision*, No. 13-CV-1335, 2014 WL 2547541, at *3 (S.D.N.Y. June 4, 2014) ("Examples of actionable conduct can 'include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.'" (alteration omitted) (quoting *Redd v. N.Y. Div. of Parole*, 678 F.3d

166, 175 (2d Cir. 2012)); *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 441 (E.D.N.Y. 2010) (holding that the plaintiff adequately stated a hostile work environment claim where the complaint alleged, inter alia, that the defendant propositioned the plaintiff and frequently suggested that the plaintiff kiss him in the morning).  But Plaintiff's SAC is entirely devoid of any allegations regarding the frequency or severity of such occurrences.  For instance, Plaintiff does not state how many comments or requests were made and when, or what was said.  Such amorphous allegations are insufficient even to clear the low bar of plausibility.  (*See generally* SAC.)  *See Batista v. Waldorf Astoria*, No. 13-CV-3226, 2015 WL 4402590, at *8 (S.D.N.Y. July 20, 2015) ("The word 'continuously' is vague and does not communicate the quantity, frequency[,] or cumulative effect on [the] [p]laintiff's work environment . . . ."); *Almontaser v. N.Y.C. Dep't of Educ.*, No. 13-CV-5621, 2014 WL 3110019, at *8 (E.D.N.Y. July 8, 2014) ("Plaintiff's allegation that these remarks were 'frequent' is simply too vague, because the precise frequency of such comments is of great importance in analyzing a hostile work environment claim."); *Negron v. City of New York*, No. 10-CV-2757, 2011 WL 4737068, at *1, *7 (E.D.N.Y. Sept. 14, 2011) (granting a motion to dismiss a hostile work environment claim where the plaintiff alleged that the defendant "repeatedly tried to sexually proposition her every time they were alone" because the conduct "was not objectively severe or pervasive and at most lasted for several weeks" (alteration and internal quotation marks omitted)).

"Isolated harassing events do not reach the level [of altering the conditions of a plaintiff's workplace] unless they involve an extraordinarily severe single event, or a series of incidents that were sufficiently continuous and concerted to alter the conditions of a plaintiff's working environment."  *Scott v. City of N.Y. Dept. of Corr.*, 641 F. Supp. 2d 211, 224 (S.D.N.Y. 2009) (internal quotation marks omitted), *aff'd sub nom. Scott v. N.Y.C. Dep't of Corr.*, 445 F. App'x

389 (2d Cir. 2011).  And while an "extraordinarily severe" single event could constitute

harassment, *Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir. 2008), here Plaintiff offers no

additional allegations about Bailey's propositioning that would allow the inference that it was

"extraordinarily severe."  *Scott*, 641 F. Supp. 2d at 224.

 Nor is the Court persuaded by Plaintiff's arguments that "the City is in sole possession of

numerous written complaints about the sexual harassment" and thus Defendants are aware of

"the exact number of times Plaintiff complained and the exact nature of the complaints Plaintiff

made."  (Pl.'s Opp'n 9.)  Such assertions say nothing about Plaintiff's obligation to submit "well-

pleaded facts" as to "permit *the court* to infer more than the mere possibility of misconduct."

*Iqbal*, 556 U.S. at 679 (emphasis added).  That is particularly true because Plaintiff presumably

has first-hand knowledge of what was said to her by Bailey and when and how often he made

any actionable comments.  Accordingly, Plaintiff's claims against Bailey and Johnson are

dismissed.

<u>b.  Plaintiff's Claims Against the City</u>

 Even had Plaintiff sufficiently pleaded that Bailey (at the direction of Johnson) created a

hostile work environment, Plaintiff's claims against the City (Count I and Count II) fail because

Bailey's behavior cannot be imputed to the City.

<u>i.  Remedial Action Under Title VII</u>

 "Under Title VII, an employer's liability for such harassment may depend on the status of

the harasser."  *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).  For an employer to be

held liable for a hostile work environment, the plaintiff must demonstrate either that "a

supervisor used his or her authority to further the creation of a discriminatorily abusive working

environment, or that the employer knew or reasonably should have known about harassment by

non-supervisory co-workers, yet failed to take appropriate remedial action." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014) (citations, and internal quotation marks omitted). Where the offensive behavior occurs at the hands of a co-worker, "the employer is liable only if it was negligent in controlling working conditions," *Vance*, 133 S. Ct. at 2439, such as where it "did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed," *id.* at 2453. Here, Plaintiff asserts that "the City's response to Bailey's harassment was not reasonable." (Pl.'s Opp'n 9.)

"Title VII simply requires that the remedial action taken be reasonably calculated to end the sexual harassment." *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 495 (S.D.N.Y. 2000). Here, there is no allegation that the harassment continued following Plaintiff's transfer. (*See* SAC ¶ 39 ("After th[e] transfer, Bailey's harassment declined.").) And while it is clear that Plaintiff is displeased with the action the City took in response to the harassment (by transferring her away from Bailey), "Title VII does not convey upon an employee the absolute right to demand that a workplace dispute be resolved in a way that is most attractive to her." *Cooper*, 106 F. Supp. 2d at 495. The City's "fail[ure] to take corrective action against Bailey," (SAC ¶ 53), is immaterial, as "there is no requirement that the remedy include punishing the co-worker responsible for the sexual harassment," *Cooper*, 106 F. Supp. 2d at 495.

## ii.  *Monell* Liability Under § 1983

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a

13

constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).

Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public

official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a

constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the

municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d

Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y.

Sept. 1, 2010) (recommending dismissal of a claim against agencies where plaintiff did not

allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398

(S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at

*9 (S.D.N.Y. Apr. 16, 2010) (recommending dismissal of a claim against county because

complaint "[did] not allege the existence of an unconstitutional custom or policy"), *adopted sub

nom. Arnold v. Westchester Cty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010).

The fifth element reflects the notion that "a municipality may not be held liable under § 1983

solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403

(1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As

subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held

liable when the municipality itself deprives an individual of a constitutional right.").  In other

words, a municipality may not be liable under [§] 1983 "by application of the doctrine of

respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted);

*see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal

entity may only be held liable where the entity *itself* commits a wrong" (emphasis in original)).

Instead, there must be a "direct causal link between a municipal policy or custom and the alleged

constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of*

*St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). A plaintiff may satisfy the "policy or custom" requirement by alleging

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). In the end, therefore, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404); *see also Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis in original)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal

connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

In response to Defendants' contention that the "City [c]annot be [l]iable [u]nder § 1983 [a]bsent a [c]ustom or [p]olicy to [d]eprive Plaintiff of a [c]onstitutional [r]ight," (Mem. of Law in Supp. of Defs.' Mot. To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs.' Mem.") 10 (Dkt. No. 43)), Plaintiff asserts that "there is an adequate allegation that both Johnson and the officials in the Police Department in charge of the sexual harassment complaint process were 'decision makers' for the purposes of §[]1983," (Pl.'s Opp'n 12). The Court is perplexed by this assertion. Nowhere in the SAC does Plaintiff plead *any* facts to support an allegation that certain individuals had policymaking or decisionmaking authority, let alone that Johnson herself, or those overseeing the sexual harassment complaint process, did.

Bailey was not a policymaker (or a supervisor) and there are no allegations suggesting as such. While Johnson may have been corporate counsel at the time the alleged conduct took place, there is no allegation that she was a policymaker as it relates to employment practices at the Police Department. *See Praprotnik*, 485 U.S. at 123 (requiring that "the challenged action" be "taken pursuant to a policy adopted by the official or officials responsible under state law for making policy *in that area of the city's business*"); *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (requiring proof that "the official who is a *final policymaker in the area* directly committed or commanded the violation of the plaintiff's federal rights or . . . indirectly caused the misconduct of a subordinate municipal employee" (emphasis added); *Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574, 594 (S.D.N.Y. 2015) ("In order to hold a municipality liable for a single decision by a municipal policymaker, a plaintiff must demonstrate the decisionmaker's final policymaking authority over the specific area of government behavior that

16

is being challenged." (citation, alterations, and internal quotation marks omitted)); *Hardy v. Town of Greenwich*, No. 06-CV-833, 2009 WL 2176117, at *4 (D. Conn. July 22, 2009) (holding that "while [the defendant] had broad discretion over appointment of particular officers to specialized units, he did not exercise final policymaking authority *in this area*" (emphasis added)). Indeed, the SAC says nothing of Johnson's connection to the policies that existed at the Police Department, or even the sexual harassment complaint process itself. Any assertion that Plaintiff has "adequate[ly] alleg[ed]" otherwise is simply untrue. (Pl.'s Opp'n 12.) As Plaintiff has failed to establish that she was subject to a hostile work environment, Defendants' Motion is granted as to Counts I and II.

### 2. Retaliation

Count III of the SAC alleges that the City retaliated against Plaintiff for activity protected by Title VII. (SAC ¶¶ 56–60.)[3] Title VII prohibits discrimination against an employee "because he [or she] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Courts analyze claims for retaliation pursuant to Title VII under the familiar framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell*

---

[3] Count III of the SAC is titled "Against the City [o]f M[ount] Vernon and the M[ount] Vernon Police Department." (SAC ¶¶ 56–60.) The Police Department is not a defendant in this Action, nor is it a suable entity. *See Carroll v. City of Mount Vernon*, 707 F. Supp. 2d 449, 450 n.2 (S.D.N.Y. 2010) (noting that the fire department is an administrative arm of the city and "administrative arms of municipalities 'do not have a legal identity separate and apart from the municipality, and cannot sue or be sued'" (quoting *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175–76 (S.D.N.Y. 2003))), *aff'd*, 453 F. App'x 99 (2d Cir. 2011); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.").

*Douglas*.").  "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of retaliation."  *Id.* at 844.  Once the plaintiff has done so, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action."  *Id.* at 845.  "The employee at all times bears the burden of persuasion to show retaliatory motive."  *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014).

To establish a prima facie case of retaliation, the plaintiff must show that: "(1) she was engaged in an activity protected under Title VII; (2) her employer was aware of her participation in the protected activity; (3) the employer took adverse action against her; and (4) a causal connection existed between the protected activity and the adverse action."  *Kwan*, 737 F.3d at 850.  To survive a motion to dismiss, however, a plaintiff need not plead a prima facie claim satisfying each of the four elements listed above.  "While the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant, at the initial stage of the litigation . . . the plaintiff does not need substantial evidence of discriminatory intent."  *Littlejohn*, 795 F.3d at 311.  If the plaintiff makes a showing "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation," *id.*, then she has satisfied the requirements of a prima facie case and "a presumption of discriminatory intent arises in her favor," *id.*  At that point "the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action."  *Id.*; *see also Rogers v. Fashion Inst. of Tech.*, No. 14-CV-6420, 2016 WL 889590, at *5 (S.D.N.Y. Feb. 26, 2016) ("[A]t the initial stage of the litigation in a Title VII case, the plaintiff does not need substantial evidence of

discriminatory intent." (internal quotation marks omitted)).  Accordingly, "for a retaliation claim

to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants

discriminated—or took an adverse employment action—against [her], (2) 'because' [she] has

opposed any unlawful employment practice."  *Vega v. Hempstead Union Free Sch. Dist.*, 801

F.3d 72, 90 (2d Cir. 2015); *see also Shein v. N.Y.C. Dep't of Educ.*, No. 15-CV-4236, 2016 WL

676458, at *7 (S.D.N.Y. Feb. 18, 2016) (noting that unlike "discrimination claims under Title

VII, the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's

adverse action" (internal quotation marks omitted)); *Goodine v. Suffolk Cty. Water Auth.*, No. 14-

CV-4514, 2016 WL 375049, at *6 (E.D.N.Y. Jan. 29, 2016) ("For a retaliation claim to survive a

motion to dismiss, a plaintiff must allege facts showing that: '(1) defendants discriminated—or

took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful

employment practice.'" (quoting *Vega*, 801 F.3d at 90)).

Defendants do not dispute that Plaintiff was engaged in protected activity and that the

alleged retaliator knew that Plaintiff was involved in such protected activity.  (*See* Defs.' Mem.

17 ("For purposes of this [M]otion, the City will address the third and fourth prongs [of the

prima facie case] which are in dispute.").)  The Court therefore addresses whether "the employer

took adverse action against [Plaintiff]" and whether "a causal connection existed between the

protected activity and the adverse action."  *Kwan*, 737 F.3d at 850.

### a.  Adverse Employment Action

In their Motion To Dismiss, Defendants contest that Bailey's verbal threats, the transfer

of Plaintiff to a separate unit, her placement on paid administrative leave status, and her

termination without a hearing constitute adverse employment actions.  (Defs.' Mem. 17–20.)  In

her opposition, Plaintiff contends that both her termination and the significant reduction of her

responsibilities were adverse employment actions, (Pl.'s Opp'n 12–13), but fails to address Bailey's threats or Plaintiff's placement on paid administrative leave. The Court thus considers only Plaintiff's transfer and subsequent termination.

"The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) ("[R]etaliation is unlawful when the retaliatory acts were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." (internal quotation marks omitted)). The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (alteration and internal quotation marks omitted).

### i.  Plaintiff's Transfer

Plaintiff alleges that "[a]fter filling out numerous written complaints concerning Bailey, Plaintiff was transferred to another unit in the Police Department," and was "essentially ostracized into a sub-station of the Police Department and cut off from other officers." (SAC ¶ 38; *see also id.* ¶ 39 (alleging "Plaintiff had essentially been segregated from the rest of the Police Department").)

"[A] transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galavba v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000). "[L]ateral transfers can, in certain circumstances, be tantamount to a demotion, and therefore, an adverse employment action." *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 618 (S.D.N.Y. 2009); *see Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, No. 10-CV-8486, 2012 WL 406915, at *4 (S.D.N.Y. Feb. 9, 2012) (finding the plaintiff "satisfied the adverse employment action requirement by alleging that his transfer . . . constituted a demotion"). However, "[a] transfer that is truly lateral and involves no significant changes in an employee's conditions of employment is not an adverse employment action regardless of whether the employee views the transfer negatively." *Watson v. Paulson*, 578 F. Supp. 2d 554, 563 (S.D.N.Y. 2008), *aff'd sub nom. Watson v. Geithner*, 355 F. App'x 482 (2d Cir. 2009); *see also Pimentel v. City of New York*, No. 00-CV-326, 2002 WL 977535, at *4 (S.D.N.Y. May 14, 2002) (noting that there is no adverse employment action when the transferred employee has "the same opportunities for promotion" (internal quotation marks omitted)), *aff'd*, 74 F. App'x 146 (2d Cir. 2003). "The fact that [the] [P]laintiff may not have wanted to transfer does not alter the analysis." *Pacheco*, 593 F. Supp. 2d at 618; *see also Garber v. N.Y.C. Police Dep't*, No. 95-CV-2516, 1997 WL 525396, at *7 (S.D.N.Y. Aug. 22, 1997) ("[The] [p]laintiff's dissatisfaction with the transfer, standing alone, does not support his claim of an adverse employment action." (footnote omitted)), *aff'd*, 159 F.3d 13461998 WL 514222 (2d Cir. 1998).

In her opposition to Defendants' Motion, Plaintiff argues that she "does *not* allege a transfer in department," but "[r]ather, . . . that she was segregated within the Police Department and precluded from performing the duties that a probationary police officer would perform."

(Pl.'s Opp'n 12 (emphasis added).)  As to Plaintiff's claims that she was segregated, such conduct is not an adverse employment action.  *See Miksic v. TD Ameritrade Holding Corp.*, No. 12-CV-4446, 2013 WL 1803956, at *4 (S.D.N.Y. Mar. 7, 2013) ("With respect to [the] [p]laintiff's allegations that he was 'isolated,' 'it is well established that ostracism and isolation at work is not enough to constitute an adverse employment action.'" (alterations omitted) (quoting *Danieu v. Teamsters Local 264,* No. 08-CV-500S, 2011 WL 1259839, at *9 (W.D.N.Y. Mar. 31, 2011))).  As to Plaintiff's argument that she was "precluded from performing the duties that a probationary police officer would perform," (Pl.'s Opp'n 12), Plaintiff does not allege as such in the SAC.  While Plaintiff does allege that "[t]he segregation . . . was explicitly designed to have a negative impact o[n] her job performance," (SAC ¶ 40), she does *not* allege that the transfer resulted in *diminished responsibilities* or indeed, responsibilities that were at all different from those Plaintiff had prior to the transfer.  *See Jiggetts v. Local 32BJ, SEIU*, No. 10-CV-9082, 2011 WL 4056312, at *10 (S.D.N.Y. Aug. 10, 2011) (dismissing  Title VII retaliation claim because the plaintiff had "not presented any facts or argument suggesting that his transfer constituted a materially adverse change in the nature of his employment").  Plaintiff's allegation that she was placed "in a position where she was unable to adequately fulfill the duties of her job," (SAC ¶ 53), is wanting of any detail and, indeed, undercuts Plaintiff's assertion that she had "significantly diminished material responsibilities," (Pl.'s Opp'n 12 (internal quotation marks omitted)).  Plaintiff "cannot use [her] opposition brief to amend [her] allegation."  *CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 1209116, at *2 (E.D.N.Y. Mar. 25, 2013); *see also Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in [the Second Circuit] that parties cannot amend their pleadings through issues raised solely in their briefs."), *aff'd*, 157 F. App'x 398 (2d Cir.

2005).  Plaintiff has failed to plead that her transfer "was to a position materially less prestigious, less suited to [her] skills, or less conducive to career advancement." *Pacheco*, 593 F. Supp. 2d at 618.  To conclude otherwise, "[the Court] would have to do more than read [the facts] in a light favorable to [Plaintiff's] claim; [the Court] would in effect have to invent that portion of her complaint explaining why those actions are adverse to her." *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 87 (2d Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

### ii.  Plaintiff's Termination

Plaintiff alleges that "[i]n or around early June 2014, Plaintiff received notice from the Police Department that she was being placed on 'paid administrative leave,'" and accordingly, Plaintiff "had been effectively terminated without a hearing and without all of the processes due her under any and all applicable law[s]."  (SAC ¶¶ 42–43.)  At some later point, "Plaintiff received notice that she was not going to be retained after her probationary period."  (*Id.* ¶ 44.) Plaintiff asserts that she was entitled to a formal meeting with the Commissioner of the Police Department, but her request to have such a meeting was denied.  (*Id.* ¶¶ 44–45.)  Defendants argue that as a probationary employee, Plaintiff "was not entitled to a due process hearing." (Defs.' Mem. 20.)

As noted above, in the context of a Title VII retaliation claim, an adverse employment action is one that could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (internal quotation marks omitted).  "Termination is clearly a materially adverse action that would dissuade a reasonable worker from making a complaint." *Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 366 (S.D.N.Y. 2006).  However, here, it is unclear whether Plaintiff was actually terminated per se.  Instead, Plaintiff was "not . . .

*retained* after her probationary period."  (SAC ¶ 44 (emphasis added).)  However, Courts have

found that the decision not to rehire or retain an employee is a sufficient adverse employment

action.  *See Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) ("A claim

of refusal to rehire an individual following the filing of an employment discrimination charge

may be a basis for a claim of retaliation"); *Travessi v. Saks Fifth Ave., Inc.*, No. 00-CV-8970,

2005 WL 1981705, at *4 (S.D.N.Y. Aug. 15, 2005) ("[The plaintiff] . . . has shown that she was

not rehired, which clearly is an adverse employment action."); *Walker v. City of New York*, No.

98-CV-2695, 2002 WL 31051534, at *4 (E.D.N.Y. July 22, 2002) (finding the plaintiff suffered

an adverse employment action where she was "not retained for employment"); *Carr v. Health

Ins. Plan of Greater N.Y., Inc.*, No. 99-CV-3706, 2001 WL 563722, at *2 (S.D.N.Y. May 24,

2001) (same).  Whether Plaintiff was not retained or terminated is immaterial for the purposes of

the instant Motion, as the outcome for Plaintiff was the same: she was no longer employed by the

Police Department.  The Court therefore finds that Plaintiff's termination constituted an adverse

employment action that would "dissuade a reasonable worker from making or supporting a

charge of discrimination," *Vega*, 801 F.3d at 90 (internal quotation marks omitted), and turns to

whether Plaintiff has presented evidence suggesting that "a causal connection existed between

the protected activity and the adverse action," *Kwan*, 737 F.3d at 850.

### b.  Causal Connection

Plaintiff asserts that "Bailey undertook a concerted course of conduct intended to [e]nsure

that Plaintiff would be terminated from her position as a police officer," and that *Bailey* did so

"as direct retaliation for both (i) Plaintiff having reported him for sexual harassment and (ii)

Plaintiff having filed a lawsuit against the City of M[ount] Vernon and the M[ount] Vernon

Youth Bureau for sexual harassment."  (SAC ¶ 57.)  Plaintiff does not assert a retaliation claim

against Bailey, and, indeed, there is no suggestion that Bailey had supervisory capacity over Plaintiff or any decisionmaking authority in regard to terminating her employment.  However, here, the Court construes Plaintiff's allegations as asserted against the City.

A plaintiff can demonstrate the causal connection one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Richardson v. Bronx Lebanon Hosp.*, No. 11-CV-9095, 2014 WL 4386731, at *12 (S.D.N.Y. Sept. 5, 2014) (same); *Weber v. City of New York*, 973 F. Supp. 2d 227, 270 (E.D.N.Y. 2013) (same).  As Plaintiff does not allege any direct evidence of retaliation, she can only rely on a temporal connection between the protected activity and adverse employment decision.

"[A] plaintiff can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."  *Kwan*, 737 F.3d at 845 (alterations and internal quotation marks omitted); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("We have held that a close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse actions can be sufficient to establish causation.").  Although the Second Circuit "ha[s] not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between [a protected activity] and an allegedly retaliatory activity," *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (internal quotation marks omitted), the temporal proximity must be "very close," *Clark Cty. Sch. Dist. v.*

*Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (internal quotation marks omitted); *see, e.g.*, *Williams v. Woodhull Med. & Mental Health Ctr.*, No. 10-CV-1429, 2012 WL 555313, at *2 (E.D.N.Y. Jan. 31, 2012) ("[D]istrict courts in [the Second] Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."), *adopted by* 2012 WL 567028 (E.D.N.Y. Feb. 21, 2012); *Baez v. Visiting Nurse Serv. of N.Y. Family Care Serv.*, No. 10-CV-6210, 2011 WL 5838441, at *6 (S.D.N.Y. Nov. 21, 2011) ("[T]he yearlong gap between two events far exceeds the normal span of time from which causality may be inferred."); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation." (citations omitted)).

Here, the Court is unable to determine whether Plaintiff has plausibly alleged a "close temporal relationship" "sufficient to establish causation," *Treglia*, 313 F.3d at 720, because Plaintiff provides no detail as to the timeline of events.  Plaintiff alleges that she was sworn into the Police Department on January 6, 2013 and that she was placed on paid administrative leave in early June 2014.  (SAC ¶¶ 27, 42.)  Plaintiff allegedly became the victim of Bailey's harassment at some point "very early in her employment" and "filed several harassment complaints about Bailey with the Police Department."  (*Id.* ¶¶ 30–31.)  But Plaintiff does not indicate when these complaints were filed, the time between the filings, or most importantly, how soon "[a]fter filling out numerous written complaints concerning Bailey," Plaintiff was transferred or terminated.  (*Id.* ¶ 38.)  Indeed, Plaintiff does not indicate how much time passed between her placement on paid administrative leave and her receipt of notice that she would not be retained after her probationary period.  Plaintiff's indication that such action occurred

"[e]ventually," (*id.* ¶ 44), is simply not the type of "well-pleaded fact[]," *Iqbal*, 556 U.S. at 679,

needed to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," *Twombly*,

550 U.S. 570.

This is not to imply that Plaintiff must recall with exact precision the dates on which each

event occurred.  Plaintiff argues that Defendants "audaciously assert[] that [they] do[] not have

enough detail to understand what it is that Plaintiff complains of," (Pl.'s Opp'n 3), but in fact, the

Plaintiff has failed to allege facts to plausibly state a retaliation claim.  Far from "attempting to

lure Plaintiff into a memory game of gotcha" or "gain an advantage in this litigation by

challenging Plaintiff's credibility," (*id.*), Defendants are objecting to ensure that Plaintiff's

claims are "sufficiently alleged to permit [Defendants] to prepare an answer, frame discovery,

and defend against these charges," *Dev. Specialists, Inc. v. Dechert LLP*, No. 11-CV-5984, 2013

WL 4573733, at *9 (S.D.N.Y. Aug. 22, 2013).  Plaintiff need not provide the exact date or even

the week or month in which the relevant conduct occurred.  Even a particular season or time of

year or approximate lapse of time might be sufficient.  But here, Plaintiff's SAC offers no such

facts to assist the Court.

The same is true for Plaintiff's claim that she was retaliated against for having filed a

lawsuit against the City and the Mount Vernon Youth Bureau.  Plaintiff supplies no details of

when the suit was filed, other than her claim that "[a]t the time she applied to the Police

Department, Plaintiff had filed a Notice of Claim with the City . . . but no complaint had been

filed in any [c]ourt naming the City . . . as a defendant."  (SAC ¶ 29.)  And while this Court is

familiar with the procedural history of Plaintiff's case against the City and the Mount Vernon

Youth Bureau, without a clear timeline of the events underlying this Action, the Court cannot

determine whether the timing of the filing of Plaintiff's previous lawsuit and the adverse action

in this case are close enough in time to allow for an inference of causation.  *See Anand v. N.Y. State Dep't of Taxation & Fin.*, No. 10-CV-5142, 2012 WL 2357720, at *6 (E.D.N.Y. June 18, 2012) (dismissing the plaintiff's retaliation claim because the plaintiff "provided no dates of the[] events, and the [c]ourt [could not] determine whether there was a genuine temporal proximity between them").  Taking as true, at it must at this stage, Plaintiff's allegations, the Court finds that Plaintiff has failed to state a claim for retaliation against the City.  Accordingly, Defendants' Motion To Dismiss this claim is granted.

 C.  State Law Claims

 The SAC states that "Plaintiff . . . brings this [A]ction pursuant to 42 U.S.C. § 2000 et seq. and New York State [l]aw."  (SAC 1.)  As Defendants note, Plaintiff "does not allege a violation of any specific provision of state law," (Defs.' Mem. 22), and Plaintiff does not respond to this argument or cite to any state law in her opposition.

 To the extent Plaintiff asserts state-law claims against Defendants, the Court declines to exercise supplemental jurisdiction over any such claims because the Court has dismissed Plaintiff's federal claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *McGugan v. Aldana–Bernier*, No. 11-CV-342, 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."), *aff'd*, 752 F.3d 224 (2d Cir. 2014).

III. Conclusion

In light of the foregoing, the Court grants Defendants' Motion To Dismiss in its entirety. As Plaintiff has already had two opportunities to amend her pleadings, the Court dismisses her claims with prejudice. *See Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y. Sept. 30, 2015) ("[The] [p]laintiff has already been given one opportunity to amend [her] complaint . . . , and there is nothing in his second amended complaint suggesting that [she] could do better given another opportunity."); *Al-Qadaffi v. Servs. for the Underserved (SUS)*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where "[the plaintiff] has already had one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*, 632 F. App'x 31 (2d Cir. 2016); *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (dismissing an amended complaint with prejudice where the plaintiff failed to cure the deficiencies identified in his initial complaint despite "being given ample opportunity to do so").

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 41), and close this case.

SO ORDERED.

DATED:      March **28**, 2017
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

29